## SULLIVAN *v.* DAVIS.

### *Exemption from Attachment.*

In replevin for a horse attached, it appeared that plaintiff, who worked out by the month, but made it his home with his father, who owned a small place of three or four acres, bought the horse when a suckling, intending to use it for team work when of ˙sufficient age, and kept it until within about a month of the time it was two years old, when it was attached, using it during the winter before the attachment, harnessed to a small sled, to draw wood a distance of about a quarter of a mile, to his father's house, and also to draw water a distance of a few rods, and, in the spring, to bush-in oats and grass seed on about an acre of his father's land. *Held*, not exempt from attachment as being kept and used for team work.

REPLEVIN for a horse. The case was referred, and the referee reported substantially as follows :

The plaintiff, a laborer, working by the month at different places, but having his home with his father, who owned a small place of three or four acres in Rutland, and was in part dependent on the plaintiff for support, bought the horse in question in the fall of 1869, when it was a sucking colt, and kept it until it was attached by John Cain, on May 3, 1871, on a writ in his favor against the plaintiff. During the winter before the attachment, when the colt was coming two years old, the plaintiff and his brother harnessed it, it being a pet colt, to a small sled and drew wood with it from

Otter Creek to their father's house, a distance of about a quarter of a mile. They also drew water with it from East Creek, a distance of but a few rods. In the spring, the plaintiff also used him to bush about an acre of land belonging to his father. The plaintiff bought and kept the colt with the intention of using him for team work when he should become of sufficient age to be used for that purpose, and he was the only horse or team he had at the time of the attachment, and was worth less than $200. The horse when attached lacked about a month of being two years old, and although large, was too young for team work. But if carefully used he might have done some light work, although it is not customary to use colts of that age at all for any purpose. After the attachment the colt was sold at sheriff's sale on *mesne* process, to John A. Cain for $130, in accordance with the statute. Judgment was finally rendered against the plaintiff, in John Cain's suit against him, in March 1872, and damages were assessed on August 5, 1872, at $200, but no execution was ever issued thereon. John A. Cain traded the horse for another with Andrew Davis, the father of the defendant, and said Andrew sold him to his son, the defendant, from whose possession he was taken by virtue of the writ of replevin in this case, said Andrew having had him a year and a half. Immediately before the colt was attached as aforesaid, the plaintiff attempted to sell him to one Traverse, but before Traverse could get possession of him he was attached. The plaintiff was sent to state prison in September 1872, for shearing horses belonging to John Cain, and remained there a year and a half; and he made no claim to the horse in question after he was sold at sheriff's sale as aforesaid until March 13, 1876, when the writ in this case was served. On that day plaintiff went to defendant's house and told him he wanted to buy the horse, and, while looking at him, said to the defendant that the horse was his and that he was going to take him; but the defendant refused to let him have him, when the plaintiff had him replevied. As an excuse for not claiming the horse before, the plaintiff testified that, as he had been sent to state prison, he intended to let the horse go, and should have done so, had not John Cain instituted another criminal prosecution against him, when he concluded to take the horse, as he had always been advised by his attorney that the horse was his, and that he had a right to take him wherever he could find him. The use of the horse while the defendant had him was worth $45, and while the plaintiff had him after he was replevied, $55. The horse was used for team work by both the defendant and his father, and is now being so used by the plaintiff. If, from the foregoing facts, the court find that the plaintiff is en-

titled to recover and that the defendant is liable to him for the use of the horse during the time he owned him, the referee finds that the defendant is guilty, &c., and finds for the plaintiff to recover $45 damages, and costs ; but, if the court should find that the plaintiff is entitled to recover, but has waived all claim for the use of the horse by not claiming and demanding him before, the referee then finds that the defendant is guilty, &c., and that he recover one cent damages and his costs. If, on the other hand, the court should find that the plaintiff is not entitled to recover, the referee then finds that the defendant is not guilty, &c., and that he is entitled to a return of said horse and to judgment therefor, and for $55 damages, and his costs.

The court, at the September Term, 1877, Ross, J., presiding, rendered judgment on the report for the return of the horse, and $55 damages, and costs ; to which plaintiff excepted.

*P. R. Kendall,* for the plaintiff.

John Cain got no title to the horse by virtue of his attachment and sale. *Hickok* v. *Thayer,* 49 Vt. 373 ; *Webster* v. *Orne,* 45 Vt. 40 ; *Mundell* v. *Hammond,* 40 Vt. 641 ; *Freeman* v. *Carpenter,* 10 Vt. 433.

It follows that the sale of the horse from Andrew Davis to the defendant was a conversion. *Deering* v. *Austin,* 34 Vt. 330 ; *Bucklin* v. *Beals,* 38 Vt. 653 ; *Moore* v. *Eldred,* 42 Vt. 13 ; *Wilkinson* v. *Wait,* 44 Vt. 508.

There was no estoppel *in pais.* *Manwell* v. *Briggs,* 17 Vt. 176.

Replevin will lie. *Briggs* v. *Gleason,* 29 Vt. 78 ; *Sprague* v. *Clark,* 41 Vt. 6. But if not, the objection comes too late. *Briggs* v. *Oaks,* 26 Vt. 138.

*Joel C. Baker,* for the defendant.

The plaintiff bases his right to recover on the exemption of the colt from attachment. But he was not exempt. Acts of 1866, No. 39.

The question of whether the horse was kept and used for team work was one of fact, and this court will not find that fact. *Webster* v. *Orne,* 45 Vt. 40.

But if the horse was exempt, the plaintiff waived his rights in that behalf.

The sheriff's sale was regular and conveyed title to the purchaser. *Griffith* v. *Fowler*, 18 Vt. 310; *Hull* v. *Matthews*, 19 Vt. 322; *Sanborn* v. *Kittredge*, 20 Vt. 632. But if not regular, if the officer's return is regular, that is conclusive between the parties. *Wood* v. *Doane*, 20 Vt. 612. The purchaser at sheriff's sale is not affected by any irregularity in the officer's proceedings; but the officer is liable therefor to the party injured. *Admr. of Janes* v. *Martin*, 7 Vt. 92; *Barnes* v. *Barnes*, 6 Vt. 388; *Gates* v. *Gaines*, 10 Vt. 346. Nor does the validity of the purchaser's title depend upon anything subsequent to the sale. The title vests at the moment of the sale. *Gates* v. *Gaines*, 10 Vt. 346; *Bates* v. *Carter*, 5 Vt. 602; *Hill* v. *Kendall*, 25 Vt. 528. The sale of personal property on the writ, vests the title in the vendee, though the plaintiff never recovers judgment in the suit. *Morse* v. *Morse*, 44 Vt. 84; *Abbott* v. *Kimball*, 19 Vt. 551.

The opinion of the court was delivered by

BARRETT, J. The law of the subject of the exemption of horses from attachment and execution is sufficiently propounded, developed, and illustrated in *Hickok* v. *Thayer*, 49 Vt., *Webster* v. *Orne*, 45 Vt., and *Mundell* v. *Hammond*, 40 Vt., for all practical purposes to be served in the present case. It is sufficient, therefore, to say that the horse in question, as it is set forth in the exceptions, was not exempt.

Judgment affirmed.